UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------- X
TUDOR INSURANCE COMPANY,

                    Plaintiff,

    -against-                              **MEMORANDUM AND ORDER**

LYUDMILA GOLOVUNIN and RADHICA BOLDEAU,    07-CV-4792 (KAM)
as Administratrix of the Estate of Igor
Golovunin, VIKTORIYA CHEREMNYKH, as
Administratrix of the Estate of
Anatoliy Cheremnykh, VADIM FISHMAN, as
administrator of the Estate of Masha
Fishman, BORIS SOYBELMAN, Individually
and as Administrator of the Estate of
Gabriella Tesia Soybelman, ANNA
KAPITANNIKOVA d/b/a ATLANTA CHILDRENS
CAMP, MAKSIM KAPITANNIKOV, and PETER
MASEK,

                    Defendants.

-------------------------------------X
**MATSUMOTO, United States District Judge:**

        Plaintiff Tudor Insurance Company ("Tudor") commenced

this diversity action on November 16, 2007 against defendants

Lyudmila Golovunin and Radhica Boldeau, as administratrix of the

estate of Igor Golovunin, Viktoriya Cheremnykh, as

administratrix of the estate of Anatoliy Cheremnykh, Vadim

Fishman, as administrator of the estate of Masha Fishman, Boris

Soybelman, individually and as administrator of the estate of

Gabriella Tesia Soybelman, Anna Kapitannikova d/b/a Atlanta

Childrens Camp, Maksim Kapitannikov, and Peter Masek.  Tudor

seeks a declaratory judgment pursuant to 28 U.S.C. § 2201

regarding its obligations under an insurance policy.

Plaintiff's motion for summary judgment is pending before the court.  (ECF No. 52, Motion for Summary Judgment, 9/17/12.)  Specifically, plaintiff seeks a judgment declaring that it has no duty (i) to defend any person or entity in four lawsuits filed in the Supreme Court of New York, Kings County related to a tragic motor vehicle accident involving six fatalities on Route 17B in Thompson, New York on July 27, 2005, or any other suit seeking damages for bodily injury or personal damages arising out of the accident, or (ii) to indemnify any person or entity against any liability for damages awarded in those four lawsuits, or any other suit seeking damages for bodily injury or property damage arising out of the July 27, 2005 accident.  For the reasons set forth below, plaintiff's motion is granted.

## BACKGROUND

The following facts, largely taken from the parties' statements pursuant to Local Civil Rule 56.1, are undisputed unless otherwise indicated.  The court has considered whether the parties have proffered admissible evidence in support of their positions and has viewed the facts in the light most favorable to the nonmoving defendants.

**A. The Tudor Policy**

On May 12, 2004, Yankee Brokerage, Inc. ("Yankee Brokerage"), an insurance broker for Atlanta Childrens Camp (the "Camp"), submitted an application for general liability insurance on behalf of Anna Kapitannikova d/b/a Atlanta Childrens Camp to Trans World Facilities, Inc. ("Trans World"), an agent of Tudor.  (ECF No. 53-1, Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts ("Pls. 56.1 Stmt."), 7/16/12, ¶¶ 10, 22-23.)[1]  That same day, Elena Goustova, a Trans World employee, forwarded the application to Andrea Viglasi, an employee in Tudor's underwriting department.  (*Id.* ¶ 24.)  On May 20, 2004, Viglasi emailed to Goustova a quote and an outline of the insurance policy that Tudor was prepared to offer the Camp.  (*Id.* ¶ 25.)  This quote identified the forms and endorsements that would make up the insurance policy, including CGOOO1 (the "Commercial General Liability Coverage Form"), WW108 (the "Transportation Exclusion"), and CG2144 (the "Limitation of Coverage to Designated Premises or Projects").  (*Id.* ¶ 26.)

The CG0001 form lists "aircraft, auto or watercraft" under "exclusions" (the "Auto Exclusion") and states that "this insurance does not apply to . . . 'bodily injury' or 'property damage' arising out of the ownership, maintenance, use or

---

[1] Defendants admit to nearly all of the facts proffered by plaintiff in plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts.  For the purposes of brevity, the court will only cite to plaintiff's 56.1 statement to the extent that both parties agree with plaintiff's proffered fact.

entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading or unloading.'" (ECF No. 53-4, Affidavit of Seth Fischer ("Fischer Aff.") at Exhibit ("Ex.") H, 7/12/12 (capitalization altered).) Insured is defined to include "[y]our 'employees' . . . but only for acts within the scope of employment by you or while performing duties related to the conduct of your business." (*Id.*)

In addition, endorsement CG2144, entitled "Limitation of Coverage to Designated Premises or Project," (the "Premises Limitation") states that "[t]his insurance applies only to 'bodily injury,' 'property damage,' 'personal and advertising injury,' and medical expenses arising out of 1. [t]he ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or 2. [t]he project shown in the Schedule." (*Id.*) The only "premises" listed on the endorsement is 26 Stratton Hill Rd., South Fallsburg, New York 12779, which was the address of the Camp. (*Id.*) No "project" was listed on the endorsement. (*Id.*)

Finally, endorsement WW108 (the "Transportation Exclusion") states that "[t]his insurance does not apply to any claim arising from the transportation of persons in any motor vehicle by or for the insured." (*Id.*)

Goustova forwarded the quote to Jeff Goldstein, another Yankee Brokerage employee, on May 20, 2004. (Pls. 56.1 Stmt. ¶ 27.)  Five days later, Goldstein sent a fax to Jonathan Gordon, a Trans World employee, confirming that the Camp wished to purchase the coverage set out in the quote. (*Id.* ¶ 28.)  At that point, Trans World could bind coverage on the terms outlined in the May 20, 2004 quote with no additional notice to Tudor. (*Id.* ¶ 29.)

On May 28, 2004, Trans World sent a fax confirming that coverage had been arranged for the Camp by Tudor from June 3, 2004 through June 3, 2005, and that the policy "excludes TRIA at the insured's election." (*Id.* ¶ 30.)  Trans World sent a second fax to Yankee Brokerage the same day, which stated "[c]overage on the above has been bound effective 6/3/04." (*Id.* ¶ 31.)  Tudor policy number NPP0900574 was issued to the Camp effective June 3, 2004. (*Id.* ¶ 32.)  In the ordinary course of business, Trans World would have sent two copies of the policy to Yankee Brokerage, which in turn was expected to forward one copy to the Camp. (*Id.* ¶ 33.)

Trans World sent hard copies of parts of policy number NPP0900574 to Tudor, including the declarations page, schedule of forms and endorsements, and forms with blanks for information specific to the policy to be written in, and Tudor scanned these pages into its computer system on July 21, 2004. (*Id.* ¶ 34.)

On August 26, 2004, Seth Fischer, a Tudor employee, reviewed the scanned pages and confirmed that the forms and endorsements were consistent with those set out in Viglasi's quote of May 20, 2004. (*Id.* ¶ 35.)

On March 30, 2005, Tudor generated a "Renewal Instruction Sheet," which indicated that Tudor policy number NPP0900574 would expire on June 3, 2005, and offered the Camp the option to renew the policy with the same forms and endorsements. (*Id.* ¶ 36.) Trans World notified Yankee Brokerage about the chance to renew the policy in a letter on April 28, 2005, and Goldstein wrote "Please Bind" on the letter for Yankee Brokerage and returned it to Trans World on June 2, 2005. (*Id.* ¶¶ 37-38.) Trans World, as Tudor's agent, bound renewal coverage for the Camp and issued policy number NPP0954861, the renewal of policy number NPP0900574, to the Camp. (*Id.* ¶ 39.) As with the previous policy, Trans World, in the ordinary course of business, would have sent two copies to Yankee Brokerage, which in turn would have sent one copy to the Camp. (*Id.* ¶ 40.) Pages from the renewal policy were scanned in Tudor's computer system on July 1, 2005. (*Id.* ¶ 41.)

In October 2010, Tudor requested Trans World to assemble and forward a complete hard copy of policy number NPP0954861; Trans World complied and sent hard copies of the declarations pages, forms and endorsements, and an endorsement

indicating the policy had eventually been canceled, to Tudor. (*Id.* ¶¶ 42-44.)  The hard copy of policy number NPP0954861 included coverage form CG0001, endorsement WW108, and endorsement CG2144.  (*Id.* ¶ 45.)  Goldstein, of Yankee Brokerage, also sent Tudor a copy of policy number NPP0954861 from his file, which also included coverage form CG0001, endorsement WW108, endorsement CG2144, as well as a schedule of forms and endorsements listing those documents.  (*Id.* ¶¶ 46-47.)  Tudor did not issue any insurance policies to the Camp other than policy number NPP0954861 and policy number NPP0900574.

### B. The Accident

Anna Kapitannikova founded the Camp in 2001 as a summer dance camp in the Catskills.  (*Id.* ¶ 1.)  Irina Mironova, who was hired by the camp as a counselor for the summer of 2005, was asked to drive Igor Golovunin, 16, Anatoliy Cheremnykh, 14, Masha Fishman, 14, and Gabriella Tesia Soybelman, 12, to a site outside the Camp on July 27, 2005.  (*Id.* ¶¶ 2-3.)  Ilya Kapitannikov, the 16 year-old son of Anna Kapitannikov, was also a passenger in Mironova's vehicle.  (*Id.* ¶ 4.)  Mironova was driving a 1994 Toyota with a suspended Florida driver's license and no insurance.  (ECF No. 55-1, Defendants' Local Rule 56.1(b)

Counterstatement of Material Facts ("Defs. 56.1 Stmt."),
9/17/12, ¶¶ 50-51.)[2]

Mironova was driving south and west on Route 17B in
Thompson, New York, when she collided into a truck heading in
the opposite direction. (Pls. 56.1 Stmt. ¶ 4.) Mironova and
all five passengers in her car were killed in the accident.
(*Id.* ¶¶ 4-6.)

Four tort actions were subsequently filed in the
Supreme Court of New York, Kings County, on behalf of the
estates of Golovunin, Cheremnykh, Fishman, and Soybelman,
seeking damages for injuries in the accident (the "underlying
actions"). (Defs. 56.1 Stmt. ¶ 8; Pls. 56.1 Stmt. ¶ 8.) The
Camp, Anna Kapitannikova and her son Maksim Kapitannikov, and
Peter Masek, allegedly an owner and/or operator of the Camp,
were named defendants in the underlying actions. (Defs. 56.1
Stmt. ¶ 9; Pls. 56.1 Stmt. ¶ 9.)

**DISCUSSION**

**A. Summary Judgment Standard**

The court shall grant summary judgment "if the movant
shows that there is no genuine dispute as to any material fact

---

[2] Defendants dispute that there has been no evidence "to establish the
employment status of Irina Mironova," (Defs. 56.1 Stmt. ¶ 2), but they have
all pled in their state court complaints that Mironova was employed by the
camp, and consequently the court does not consider this fact to be in
dispute. (ECF No. 53-5, Affidavit of Philip A. Bramson ("Bramson Aff."),
7/16/12, ¶ 3 & Ex. B.)

and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  "[T]he mere existence of *some* alleged
factual dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment; the requirement
is that there be no *genuine* issue of *material* fact."  *Anderson*
*v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in
original); *see also Opals on Ice Lingerie, Designs by*
*Bernadette, Inc. v. Bodylines, Inc.*, 320 F.3d 362, 368 (2d Cir.
2003) (same).  "A fact is material if it might affect the
outcome of the suit under the governing law."  *Fincher v.*
*Depository Trust and Clearing Corp.*, 604 F.3d 712, 720 (2d Cir.
2010) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d
Cir. 2008)).  "An issue of fact is genuine if the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party."  *Id.* (quoting *Roe*, 542 F.3d at 35).
Additionally, no genuine issue of material fact exists "unless
there is sufficient evidence favoring the nonmoving party for a
jury to return a verdict for that party.  If the evidence is
merely colorable, or is not significantly probative, summary
judgment may be granted."  *Anderson*, 477 U.S. at 249-50
(internal citations omitted).

  The moving party carries the burden of demonstrating
"the absence of a genuine issue of material fact."  *FDIC v.*
*Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved against the moving party.  *Id.*  Nevertheless, the nonmoving party may not rest merely on allegations or denials but must instead set out specific facts showing a genuine issue for trial.  *See id.* ("To defeat a summary judgment motion, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation.") (internal quotation and citation omitted).  Finally, summary judgment may be especially appropriate where the issue before the court is the construction of an insurance policy because "[t]he initial interpretation of a contract is a matter of law for the courts to decide."  *IBM v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004) (quoting *Morgan Stanley Grp., Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000)).

**B. Exclusions and Limitations of Insurance Coverage**

**1. Legal Standard**

Under New York law, "[a]mbiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated

agreement." *U.S. Specialty Ins. Co. v. LeBeau, Inc.*, 847 F. Supp. 2d 500, 503 (W.D.N.Y. 2012) (quoting *40 Gardenville, LLC v. Travelers Prop. Cas. of Am.*, 387 F. Supp. 2d 205, 212 (W.D.N.Y. 2005)).[3]  The test for ambiguity in an insurance agreement is whether "an ordinary business man in applying for insurance and reading the language of these policies . . . would have thought himself covered against precisely the damage claims now asserted." *Id.* at 504 (quoting *Kenyon v. Security Ins. Co. of Hartford*, 626 N.Y.S.2d 347, 350 (N.Y. Sup. Ct. 1993); *see also Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 314 N.E.2d 37, 39 (N.Y. 1974) (same).  "However, provisions in a contract are not ambiguous merely because the parties interpret them differently." *Mount Vernon Fire Ins. Co. v. Creative Hous., Ltd.*, 668 N.E.2d 404, 405 (N.Y. 1996).  "No ambiguity exists when contract language has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (quoting *Breed v. Ins. Co. of N. Am.*, 385 N.E.2d 1280, 1282 (N.Y. 1978)).  Moreover, "[w]ithin the context of

---

[3] A district court sitting in diversity must apply the substantive law of the state in which it sits. *Comer v. Titan Tool*, 888 F. Supp. 605, 608 (S.D.N.Y. 1995).  Accordingly, the parties do not dispute that New York law governs this dispute.

automobile exclusion clauses, [t]he words 'arising out of' are hardly ambiguous.  When used in an exclusion, they are deemed to be broad, general, comprehensive terms ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle." *New Hampshire Ins. Co. v. Jefferson Ins. Co.*, 624 N.Y.S.2d 392, 396 (N.Y. App. Div. 1995) (internal quotation and citation omitted).

"It is well settled that under New York law, it is the act giving rise to liability — and not the theory of liability alleged — that is determinative of whether an insurance policy exclusion applies." *U.S. Specialty Ins. Co.*, 847 F. Supp. 2d at 504; *see also Mount Vernon*, 668 N.E.2d at 405 (holding that, even though an insured may be responsible for an injury under a certain theory of liability, that "does not resolve the insured's right to coverage based on the language of the contract between him and the insurer . . . . or overcome the policy's exclusion[s]"); *U.S. Fire Ins. Co. v. New York Marine and Gen. Ins. Co.*, 706 N.Y.S.2d 377, 379 (N.Y. App. Div. 2000) ("it is the act giving rise to liability that is determinative, not the theories of liability alleged").

Finally, "[w]here insurance coverage is ambiguous, doubts are to be resolved in favor of the insured and against the insurer . . . . [and] [m]ore specifically, exclusionary clauses in which the insured had little or no input are to be

strictly construed against insurers." *U.S. Specialty Ins. Co.*,
847 F. Supp. 2d at 503-504; *see also Thomas J. Lipton, Inc.*, 314
N.E.2d at 39 ("It is fundamental that ambiguities in an
insurance policy must be construed against the insurer . . . .
This is particularly so as to ambiguities found in an
exclusionary clause.").

### 2. Application

Plaintiff asserts that it has no obligation to defend
or indemnify any person or entity in connection with the July
27, 2005 accident, under any theory of liability, because of the
auto and transportation exclusions, and the limitation of
coverage to the camp premises.  (ECF No. 53, Plaintiff's
Memorandum of Law in Support of Summary Judgment ("Mem."),
7/16/12, at 9-17.)  Defendants claim that the Auto Exclusion and
the Premises Limitation do not apply and that the Transportation
Exclusion is ambiguous and should be construed against Tudor.
(ECF No. 54, Soybelman Defendant's Memorandum of Law in
Opposition to Plaintiff's Motion for Summary Judgment
("Soybelman Opp."), 8/27/12; ECF No. 55, Golovunin, Boldeau,
Cheremnykh, and Fishman Defendants' Memorandum of Law in
Opposition to Motion for Summary Judgment ("Opp."), 8/27/12.)
Defendants also argue that plaintiff's motion suffers from
procedural deficiencies and that there are outstanding disputed

issues of material fact.  (Opp.; Soybelman Opp.)[4]

**a. The Auto Exclusion**

The first issue for the court is whether the Auto
Exclusion precludes coverage for any claims arising out of the
July 27, 2005 accident.

The CG0001 form states that "this insurance does not
apply to . . . 'bodily injury' or 'property damage' arising out
of the ownership, maintenance, use or entrustment to others of
any aircraft, 'auto' or watercraft owned or operated by or
rented or loaned to any insured."  (Fischer Aff. at Ex. H
(capitalization altered).)  The agreement defines "insured" as
"'employees' . . . but only for acts within the scope of
employment . . . while performing duties related to the . . .
business."  (*Id.*)  Plaintiff argues this exclusion unambiguously
excludes any insurance coverage by Tudor for injuries or damage

---

[4] Defendants assert that plaintiff's summary judgment motion is defective
because (i) it does not include all of the pleadings in this case as
attachments, (ii) defendants have not yet secured a judgment against
plaintiff's insureds, and (iii) plaintiff has submitted a re-created
insurance policy based in part on information that was digitally stored.
(Opp. at 9-10, 13-14.)  These arguments are unavailing.  First, there is no
requirement under the Federal Rules of Civil Procedure or the local civil
rules for a party to attach copies of pleadings to a summary judgment motion.
Second, judgment was entered by Judge Robert Miller of the Supreme Court of
the State of New York on September 29, 2008 against the Camp, Anna
Kapitannikova, and other defendants in the Fishman case.  (ECF No. 56-1,
Affidavit of Philip A. Bramson, 9/13/12, at Ex. A.)  Moreover, the law upon
which defendants rely, New York Insurance Law section 3420, governs when an
action may be maintained against an insurer, not when an insurer can maintain
an action.  N.Y. Ins. Law § 3420.  Here, plaintiff seeks a declaratory
judgment pursuant to 28 U.S.C. § 2201.  (ECF No. 1, Complaint, 11/16/07.)
Third, plaintiff has proffered sufficient undisputed evidence that the
insurance policy it has presented is consistent with the detailed quote
provided by Tudor and agreed to by the Camp, (Fischer Aff. & Exs.), while
defendants have not proffered any evidence to raise a material issue
concerning the insurance policy's authenticity.

related to the accident because Mironova was operating an auto on behalf of the Camp during the accident.  (Mem. at 11-12.)

Defendants claim there is an issue of material fact concerning the Auto Exclusion because there is no evidence that Mironova was employed by the Camp.  (Opp. at 15-16.)  Yet defendants have all asserted in their state court complaints that Mironova was an "employee" of the Camp and was driving in the course of her employment by the Camp.  (Bramson Aff. at Ex. B.)  Because "[i]t is well established that pleadings filed by a party's attorney are 'admissions of a party-opponent and are admissible in the case in which they were originally filed as well as in any subsequent litigation involving that party,'" defendants have conceded that Mironova was employed by the Camp and cannot now argue otherwise. *EEOC v. Town of Huntington*, No. 05 CV 4559, 2008 U.S. Dist. LEXIS 9602, at *21 (E.D.N.Y. Feb. 8, 2008 (quoting *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984)); *see also Combustion Prods. Mgmt. v. AES Corp.*, No. 05-CV-929, 2006 U.S. Dist. LEXIS 43373, at *12 n.2 (N.D.N.Y. June 27, 2006) (same).  Accordingly, there is no issue of material fact concerning Mironova's employment by the Camp during the accident.[5]

---

[5] As plaintiff points out, defendants have also failed to proffer any evidence that Mironova was only a "temporary worker" and not an insured under the terms of the policy beyond their assertion that all camp employees should be considered "seasonal," or "temporary" employees.  (ECF No. 56, Reply Memorandum of Law in Support of Motion for Summary Judgment ("Reply"),

Defendants also argue that their negligent supervision and negligent entrustment claims "are independent and unrelated" to Mironova's use of the auto and are not covered by the Auto Exclusion.  (Opp. at 20.)  But under New York law, "it is the act giving rise to liability — and not the theory of liability alleged — that is determinative of whether an insurance policy exclusion applies."  *U.S. Specialty Ins. Co.*, 847 F. Supp. 2d at 504.  In *New Hampshire Insurance Co.*, the Appellate Division of the First Department held that an auto exclusion similar to the one at issue in this case "falls squarely within the operation of the exclusion clause of [the] general liability policy exempting coverage for *any injury* 'arising out of' the use or operation of an automobile."  *New Hampshire Ins. Co.*, 624 N.Y.S.2d at 394 (emphasis added).  Because it is undisputed that the fatal car accident was the act giving rise to liability in this case, the Auto Exclusion shields plaintiff from any obligation to defend or indemnify any person or entity in connection with the July 27, 2005 accident.  (Pls. 56.1 Stmt. ¶¶ 4-6.)

**b. The Transportation Exclusion**

Plaintiff also argues that the Transportation Exclusion in the insurance contract similarly shields it from

---

9/14/12, at 7-9.)  Moreover, the New York State Department of Health's report on the July 27, 2005 accident refers to Mironova as a "counselor" and *not* as a seasonal employee.  (ECF No. 57, New York State Department of Health Report, 10/10/12, at Ex. A.)

any duty to defend or indemnify any person or entity in connection with the July 27, 2005 accident.  (Mem. at 11-13.) The Transportation Exclusion states that "[t]his insurance does not apply to any claim arising from the transportation of persons in any motor vehicle by or for the insured." (Fischer Aff. at Ex. H.)

Defendants argue that this clause is ambiguous because, unlike the assault and battery exclusion of the same insurance agreement, it does not specifically enumerate that "allegations of negligent hiring, placement, training, or supervision" are included in the exclusion.  (Opp. at 25-28.) Contrary to defendants' argument, one exclusion is "not rendered ineffective by . . . [an] exception to [another] exclusion," *Ruge v. Utica First Ins. Co.*, 819 N.Y.S.2d 564, 566 (N.Y. App. Div. 2006), because "[e]xclusions in policies of insurance must be read *seriatim*, not cumulatively, and if any one exclusion applies there can be no coverage since no one exclusion can be regarded as inconsistent with another," *Zandri Constr. Co. v. Firemen's Ins. Co.*, 440 N.Y.S.2d 353, 356 (N.Y. App. Div. 1981).

Therefore, the language of the assault and battery exclusion is irrelevant to the interpretation of the Transportation Exclusion, which clearly and unambiguously excludes coverage "arising from the transportation of persons in any motor vehicle by or for the insured," and shields plaintiff

17

from any obligation to defend or indemnify any person or entity
in connection with the July 27, 2005 car accident.  (Fischer
Aff. at Ex. H.)[6]

### c. The Premises Limitation

Finally, plaintiff argues that it is shielded from any
coverage obligation related to the July 27, 2005 accident
because the insuring agreement limited coverage to the Camp's
premises.  The Premises Limitation in endorsement CG2144 states
that "[t]his insurance applies only to 'bodily injury,'
'property damage,' 'personal and advertising injury,' and
medical expenses arising out of 1. [t]he ownership, maintenance
or use of the premises shown in the Schedule and operations
necessary or incidental to those premises; or 2. [t]he project
shown in the Schedule."  (Fischer Aff. at Ex. H.)  The only
premises listed on the endorsement is 26 Stratton Hill Rd.,
South Fallsburg, New York 12779, which was the address of the
Camp.  (*Id.*)  Because it is undisputed that the July 27, 2005
accident did not occur on the camp premises, but instead on
Route 17B in Thompson, New York, plaintiff asserts that any
claims arising out of the accident are not subject to Tudor's
insurance coverage.  (Pls. 56.1 Stmt. ¶¶ 4-6.)

---

[6] Defendants rely on *Essex Insurance Co. v. Grand Stone Quarry, LLC*, for
support.  918 N.Y.S.2d 238, 239-41 (N.Y. App. Div. 2011).  In *Essex*, the
court found that the insurance company had created an ambiguity in the auto
exclusion as a result of an amendment, but there is no similar amendment at
issue in this case and *Essex* has no relevance.

Defendants first point to a completely different section of the contract that describes a "coverage territory" including "[a]ll parts of the world" to argue that the Premises Limitation does not apply. (Opp. at 30-31.)  This argument is factually incorrect because defendants have only looked to a definition that sets the outer limit of potential territorial coverage, *not* the specific territory covered by the insurance policy at issue here, which is, in fact, the "premises" of the Camp defined in endorsement CG2144 as "26 Stratton Hill Rd., South Fallsburg, New York 12779." (Fischer Aff. at Ex. H; *see* Reply at 4.)

Defendants also argue that the Premises Limitation does not apply because the trip was part of "operations 'necessary or incidental to' the business of the camp, namely supervision of children." (Opp. at 35; *see also* Soybelman Opp. at 5.)  Courts applying New York law have found, however, that "the phrase 'operations necessary or incidental to those premises' is *not* broad enough to include business-related activity necessary or incidental to [defendant's] business operations." *Accessories Biz, Inc. v. Linda and Jay Keane, Inc.*, 533 F. Supp. 2d 381, 389 (S.D.N.Y. 2008) (emphasis added). Instead, the phrase "carries principally a spatial meaning, extending the premises listed in the schedules accompanying the insurance policy to certain non-scheduled, appurtenant spaces

'necessary or incidental' to the enjoyment or use of the insured premises." *Ten Seventy One Home Corp. v. Liberty Mut. Fire Ins. Co.*, No. 07 Civ. 11211, 2008 U.S. Dist. LEXIS 47328, at *9 (S.D.N.Y. June 18, 2008).  Thus, by using the phrase "operations necessary or incidental to those *premises*," the plain language of the Premises Limitation clearly limits coverage to the Camp's physical premises, thereby shielding plaintiff from having to defend or indemnify any person or entity in connection with claims arising out of the July 27, 2005 accident.  (Fischer Aff. at Ex. H (emphasis added).)

## CONCLUSION

For the foregoing reasons, the court grants in its entirety plaintiff's motion for summary judgment declaring that it has no duty (i) to defend any person or entity in four suits filed in the Supreme Court of New York, Kings County related to a fatal motor vehicle accident on Route 17B in Thompson, New York on July 27, 2005, or any other suit seeking damages for bodily injury or personal damages arising out of the accident, or (ii) to indemnify any person or entity against any liability for damages awarded in those four suits, or any other suit seeking damages for bodily injury or property damage arising out of the accident.

The clerk of court is respectfully requested to enter judgment in favor of plaintiff and to close this case.

**SO ORDERED.**

Dated:      September 27, 2013
            Brooklyn, New York

                              _____/s/_____
                              KIYO A. MATSUMOTO
                              United States District Judge
                              Eastern District of New York